UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RHAVI HILL,                    :          NO. 1:09-CV-00205
                               :
        Plaintiff,             :
                               :
    v.                         :          **OPINION AND ORDER**
                               :
BAKER CONCRETE CONSTRUCTION     :
CO.,                           :
                               :
        Defendant.             :

        This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 13), Plaintiff's Memorandum in Opposition
(doc. 14), and Defendant's Reply (doc. 15).   For the reasons
indicated herein, the Court GRANTS IN PART and DENIES IN PART
Defendant's motion, so as to allow Plaintiff to proceed with his
federal and state law discrimination claims, while dismissing
Plaintiff's common law claim.

I.  **BACKGROUND**

        Defendant Baker Concrete Construction, Inc., employed
Plaintiff Rhavi Hill in repeated stints in 1993, 2000-01, and 2006,
first as a temporary labor worker and later as a full-time laborer
in the Form Shop (docs. 13, 14).   Plaintiff, who is African
American, alleges in his Complaint that Bill Shebetka ("Shebetka"),
Defendant's Formworks Operations Manager, expressed an unconcealed
distaste for Plaintiff because of his race, despite Plaintiff's
stellar work record (doc. 14).   According to Plaintiff, Shebetka

falsely accused Plaintiff of lying during an investigation concerning a co-worker, Seth Fuchs ("Fuchs"), who discharged a firearm at a construction site (_Id_.). Plaintiff further contends he was falsely accused of assaulting co-worker Jeff Vaught ("Vaught") at a Columbus hotel (_Id_.). Defendant ultimately terminated Plaintiff's employment in January 2008 (_Id_.).

Plaintiff filed his Complaint on March 20, 2009, bringing claims pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, _et_. _seq_., Ohio Rev. Code § 4112, and the common law of the State of Ohio (_Id_.). In response, Defendant contends it terminated Plaintiff not due to his race, but rather because Plaintiff lied during the Fuchs investigation and about the incident with Vaught (docs. 13, 15). According to Defendant, Plaintiff also had an extensive disciplinary history, including incidents of cursing at and inappropriate behavior toward coworkers (doc. 13). Plaintiff responds that the disciplinary history was a result of racial discrimination, denies lying during the Fuchs investigation, and denies ever assaulting Vaught (doc. 14). Defendant filed its Motion for Summary Judgment on December 1, 2009, Plaintiff responded, and Defendant replied, such that this matter is ripe for the Court's consideration.

## II. FACTS

The parties do not contest the basic facts of the case. However, the parties offer different interpretations of the facts, as Plaintiff alleges the facts support his claims for discrimination, while Defendant argues the facts show it justifiably terminated Plaintiff's employment (docs. 13, 14). The following facts are drawn from the pleadings, the motions, depositions, and other filings in this matter.

Plaintiff worked for Defendant as a temporary labor worker through a placement agency, CBS Personnel Services, around 1992 or 1993 (doc. 13). According to Defendant, Plaintiff ended his employment with CBS after about a month because he was no longer willing to perform the type of work Defendant required of him (Id.).

Plaintiff returned to work for Defendant through CBS at some point between 1999 and 2001 in a temporary capacity as a laborer in Defendant's Form Shop (docs. 13, 14). After working as a temporary employee for over a year, Plaintiff was hired into a full-time position as a laborer in the Form Shop (Id.). Shortly after he was hired, Defendant claimed Plaintiff had failed a drug test and it terminated Plaintiff's employment (Id.).

Plaintiff returned to work for Defendant again in 2005 as a temporary employee through CBS (doc. 14). In 2006, Defendant hired Plaintiff full-time (docs. 13, 14). During Plaintiff's work

for Defendant as a laborer in the Form Shop, his duties included assembling the form panels used for concrete pouring, cleaning concrete off used panels, building parking garage beams, and otherwise providing support for Defendant's construction job sites (doc. 13).

Plaintiff was the only African-American in the Form Shop (doc. 14). Plaintiff generally got along well with his coworkers and enjoyed his work (docs. 13, 14). At some point during Plaintiff's employment, Shebetka began actively managing the Form Shop as Operations Manager (<u>Id.</u>). Shebetka issued a memo to all shop co-workers regarding work policies, including those regarding personal conduct and behavior at work (doc. 13). Defendant's handbook and Shebetka's memo both highlighted the prohibition on offensive behavior, disrespect towards co-workers, fighting and violence, and weapons in the workplace (<u>Id.</u>).

Plaintiff alleges that Shebetka treated him differently from his Caucasian co-workers and singled Plaintiff out on several disciplinary occasions (doc. 14). First, Plaintiff alleges that in September 2007, Plaintiff was training co-worker Matt Sexton ("Sexton") on the proper method of stacking "Meva props" (doc. 14). Plaintiff alleges that Sexton nonchalantly picked up a prop and threw it on the stack, causing Hill's fingers to be crushed (<u>Id.</u>). Plaintiff reacted by cursing at Sexton (docs. 13, 14). Shebetka gave Plaintiff a verbal warning about his conduct (<u>Id.</u>). According

4

to Defendant, Shebetka also spoke with Sexton about performing the task in a safe manner (docs. 13, 15).

Also in September 2007, while Plaintiff was operating a forklift and loading a "Gates column," several loose screws and nuts came off the load (doc. 14). Plaintiff alleges that Zachary Schaiper ("Schaiper"), a co-worker, negligently left the screws on the load (Id.). After Plaintiff and Schaiper cleaned up the mess at the end of the day, Schaiper claimed Plaintiff cursed at him and forced him to help clean up (Id.). Plaintiff contends that Defendant gave him a verbal warning for his conduct while Defendant did not discipline Schaiper (Id.).

In October 2007, Schaiper used Plaintiff's respirator while Plaintiff was off work (docs. 13, 14). When Plaintiff discovered Schaiper had used his respirator, Plaintiff called Schaiper and said he should slap Schaiper for what he did (Id.). Shebetka then issued a written warning to Plaintiff for threatening to slap a co-worker (Id.). According to Defendant, Shebetka also verbally warned Schaiper for using Hill's respirator (Id.).

In November 2007, Plaintiff and Robert Dunn ("Dunn"), a co-worker, were engaged in an argument concerning who should be in the photograph for the Company Newsletter (doc. 14). Plaintiff contends that Dunn and Plaintiff were screaming and cursing at each other (Id.). Although Shebetka verbally warned Plaintiff, Shebetka did not discipline Dunn for his conduct (Id.).

In December 2007, Plaintiff was working alongside Sexton when he used the term 'wop' (docs. 13, 14). Sexton claimed Plaintiff called him a 'wop,' a derogatory term for an Italian-American (<u>Id.</u>). Plaintiff claims he used the term to refer to the sound of a nail gun (doc. 14). Although Plaintiff did not know the meaning of the term 'wop,' Plaintiff admitted to knowing Sexton was offended by the term (<u>Id.</u>). Shebetka then issued a written warning for Plaintiff (docs. 13, 14). However, Plaintiff alleges that Chuck Dunn, another co-worker, had been using the term in a derogatory sense towards Sexton, but Defendant never disciplined Dunn (doc. 14).

Finally, in mid-December 2007, Defendant assigned Plaintiff, Fuchs, and Vaught, to work at a job site in Columbus, Ohio (docs. 13, 14). The three worked in Columbus during the week, stayed in a hotel in Columbus, and returned home on the weekends (doc. 14). During that time, Fuchs revealed to Plaintiff that he had brought a gun with him (docs. 13, 14). Plaintiff claims that he saw the gun at the hotel room, but that he never saw the gun at the job site (doc. 14). On December 28, 2007, Fuchs fired the gun at work (docs. 13, 14). Plaintiff claims that Fuchs fired the gun while Plaintiff was away getting lunch for the crew, and that Fuchs told Plaintiff he had fired it afterwards by showing Plaintiff a bullet hole left by the gun shot (doc. 14). Vaught and Fuchs stated that Plaintiff was standing near Fuchs when the gun was

fired (doc. 13).  In addition to reporting this incident, Vaught claimed that Plaintiff shoved and cursed at Vaught one day while trying to pass him in their hotel room (docs. 13, 14).  According to Plaintiff, Vaught had driven in a wild manner to work one day and that both Fuchs and Plaintiff accused him of drinking and driving (doc. 14).  Plaintiff further stated that Vaught became incensed at this accusation and did not speak to Fuchs or Plaintiff at work or at the hotel for the rest of the week (<u>Id.</u>).  Plaintiff contends that Vaught subsequently falsely reported the shoving incident (<u>Id.</u>).

Shebetka and Denise Haaser, Corporate Director of Human Resources, proceeded to investigate the incidents and question Vaught, Fuchs, and Plaintiff, while suspending all three with pay pending the investigation (doc. 13).  At the job site, Defendant discovered the shell casing of a .22 caliber bullet along with the white protective material that wrapped around the deck tables at the job site, which had a bullet hole in it (<u>Id.</u>).  In response to questioning, Vaught stated that Plaintiff was standing by Fuchs when he shot the gun, and that Plaintiff had allegedly shoved and cursed at him at the hotel (<u>Id.</u>).  Fuchs initially denied shooting the gun, but ultimately stated that he had shot the gun at work and that Plaintiff was standing nearby (<u>Id.</u>).  Although Plaintiff admitted that Fuchs told him about firing the gun, and stated he had seen the gun at the hotel, he denied ever seeing the gun at the

job site (Id.).  Plaintiff further denied ever shoving Vaught (Id.).

Following these conversations, Shebetka and Haaser met with other members of Baker Concrete and determined that Plaintiff had lied during the investigation about both the shooting and shoving incidents (docs. 13, 14).  Defendant claims it based its determination on Plaintiff's past history of cursing, inappropriate behavior, disciplinary history, and his denial that a gun was brought to the Columbus job site (doc. 13).  According to Plaintiff, Defendant's determination was based upon his allegedly aggressive behavior, the fact that he was on probation, and also because the statement by two Caucasian employees contradicted the testimony by Plaintiff, an African-American (Id.).

Defendant ultimately terminated Fuchs for the shooting incident and terminated Plaintiff for lying during the investigation (docs. 13, 14).  Defendant gave Plaintiff the opportunity to resign and offered not to contest his unemployment, but Plaintiff refused the option (doc. 13).  Subsequently, according to Plaintiff, Fuchs received a telephone call from someone allegedly at Baker Concrete telling him to apply at Lithko Restoration, a company which was associated with Baker Concrete, and Lithko ultimately hired Fuchs (doc. 14).

## III. ANALYSIS

### A. Applicable Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. Of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-

movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Phillip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 11 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses

in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

## B. Discussion

Plaintiff's discrimination claims are brought under Title VII of the Civil Rights Act of 1964, its Ohio state law analog, Ohio Revised Code § 4112, and 42 U.S.C. § 1981 which protects contract rights of minorities.  The same evidentiary framework applies to discrimination claims brought under Title VII, Ohio state law, and 42 U.S.C. § 1981.  Mitchell v. Toledo Hospital, 964 F.2d 577, 582 (6th Cir. 1992), Allen v. Ethicon, Inc., 919 F. Supp. 1093, 1098 (S.D. Ohio 1996).

In order to establish a claim of race discrimination in employment, Plaintiff may either introduce direct evidence of discrimination or prove circumstantial evidence that would support an inference of discrimination. Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997), Manzer v. Diamond Shamrock Chemicals

<u>Co.</u>, 29 F.3d 1078, 1081 (6th Cir. 1994); <u>McDonnell Douglas Corp. v.</u> <u>Green</u>, 411 U.S. 792, 802,(1973); <u>Ackerman v. Diamond Shamrock</u> <u>Corp</u>., 670 F.2d 66 (6th Cir. 1982).  In the case at bar, Plaintiff makes a claim based on direct evidence, and further argues the facts raise an inference of discrimination through circumstantial evidence.  <u>McDonnell Douglas</u>, 411 U.S. 792 (1973).

**1. Proof By Direct Evidence**

First, Plaintiff alleges that he has direct evidence of discrimination in the depositions of Shebetka and Haaser.  Direct evidence is evidence, which if believed, proves existence of the fact in issue without inference or presumption.  <u>Rollins v.</u> <u>TechSouth, Inc.</u>, 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987) (citing Black's Law Dictionary 413 (5th ed. 1979).  Plaintiff proffers three depositions as evidence of direct evidence: Plaintiff's deposition discussing that the disciplinary actions were because of his intimidating actions towards co-workers; Shebetka's deposition concerning his treatment of Plaintiff's statement with regards to slapping a co-worker as a threat; and Haaser's deposition stating that Plaintiff's character was aggressive and that he used rough language.

The Court has reviewed the deposition statements and finds no direct evidence of discrimination.  None of the statements relate to race.  As such, no fact-finder could conclude such statements prove discriminatory animus without making inferences or

13

presumptions.  The Court therefore rejects Plaintiff's theory that he has proffered direct evidence of discrimination.

**2. Proof By Circumstantial Evidence**

In order to establish a <u>prima</u> <u>facie</u> case of circumstantial evidence of racial discrimination, Plaintiff must show 1) he is a member of a protected class, 2) he was qualified for the job, 3) he suffered an adverse employment action, and 4) he was replaced or treated less favorably than a similarly-situated person outside the protected class.  <u>Hoskins v. Oakland County Sheriff's Department</u>, 227 F.3d 719, 731 (6th Cir. 2000)(<u>citing McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)).  In response, Defendant must proffer a legitimate non-discriminatory reason for its actions <u>Id</u>  If Defendant proffers such a reason, Plaintiff then has the burden to prove that the stated reason is pretextual.  <u>Id</u>.

In this case, the only contested element in the <u>prima facie</u> case is whether Plaintiff was treated less favorably than a similarly-situated person outside the protected class.  Defendant argues that Plaintiff has failed to raise a genuine issue for trial with respect to his racial discrimination claim because, in its view, Plaintiff has failed to present evidence that he was replaced by an individual outside his protected class or was treated less favorably than similarly-situated employees (doc. 13, <u>citing</u> <u>Holmes v. General Elec. Co.</u>, 2006 U.S. Dist. LEXIS 11917, *5-8 (S.D. Ohio

March 22, 2006), and <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 582 (6th Cir. 1992)).  Moreover, Defendant argues that Plaintiff offers no evidence of pretext in response to Defendant's proffered legitimate non-discriminatory reason for his discharge.  Having reviewed Defendant's arguments, the Court does not find well taken its position that Plaintiff has failed to raise a genuine issue for trial with respect to his racial discrimination claim.

### a. Less Favorable Treatment

The Court finds adequate evidence such that a reasonable jury could conclude Defendant treated Plaintiff differently from non-minority employees over the course of his employment.  First, as for the 'props' incident with Sexton, a reasonable jury could find that Defendant treated Plaintiff and Sexton differently.  Although Defendant verbally warned Plaintiff for his verbal language, Defendant did not discipline Sexton, but rather spoke to him about performing tasks in a safe manner.  If a jury would believe Plaintiff's version of the facts, that Sexton threw the props and caused Plaintiff's fingers to be crushed, it could reasonably find that Defendant should have disciplined Sexton as well.

Second, after the incident where Plaintiff and Schaiper cleaned up a mess caused by loose screws and nuts coming off the "Gates column," Defendant disciplined Plaintiff for cursing at Schaiper and forcing him to clean up.  A reasonable jury could

determine that Defendant treated the two workers differently by disciplining Plaintiff for his verbal language, but not disciplining Schaiper for negligently leaving screws on the load.

Third, a reasonable jury could find that Defendant treated Plaintiff and Schaiper differently after Schaiper used Plaintiff's respirator and Plaintiff threated to slap him for doing so. Defendant issued a written warning to Plaintiff, but only issued a verbal warning to Schaiper. A jury could find Defendant treated the two parties differently.

Fourth, if a jury believes Plaintiff that Dunn and Plaintiff were both screaming and cursing at each other during the Company Newsletter photo shoot, it could conclude that Defendant did not treat the two equally. Because Defendant verbally warned Plaintiff afterwards, but did not discipline Dunn, a reasonable jury could find disparate treatment.

Fifth, a jury could find that Defendant treated Plaintiff and Dunn differently with regards to the use of the term 'wop.' A jury could believe Plaintiff's argument that Dunn had used the term 'wop' in a derogatory sense towards Sexton. If the jury believes Plaintiff, then it could find that Defendant treated Plaintiff and Dunn differently by issuing a written warning for Plaintiff, while not disciplining Dunn.

Finally, with regards to the shooting incident at the Columbus job site and the alleged shoving incident at the hotel, a

reasonable jury could find that Defendant treated Plaintiff and Vaught differently. Although Defendant terminated Plaintiff for allegedly lying during the investigation, a jury could believe Plaintiff's argument that he did not lie about the shoving incident but that Vaught had lied instead. Furthermore, a jury could believe Plaintiff's testimony that he did not lie during the investigation concerning the shooting incident because he did not know Fuchs had brought a gun to the work site and that he merely saw the protective material with a bullet hole in it afterwards.

A jury could find that Defendant disciplined Plaintiff in each of these incidents and that Defendant did not discipline similarly situated Caucasian co-workers in the same manner. While Defendant argues that all of these assorted facts do not amount to adverse employment actions in and of themselves, they certainly could lead a jury to conclude that during the course of his employment, Defendant treated Plaintiff differently than Caucasian workers. A jury could find that the cumulative effect of these prior incidents resulted in Plaintiff's disciplinary history, while in contrast, coworkers such as Fuchs and Vaught had a clean history. Such disciplinary history clearly contributed to Defendant's decision to terminate Plaintiff. Taking all inferences in favor of the non-movant, as the Court is required to do in the context of this summary judgment motion, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, at 587 (1986), the

Court concludes that Plaintiff has raised a genuine issue of material fact as to whether he was treated differently than his white coworkers. A jury could accept Plaintiff's argument that his disciplinary records were skewed by unfair treatment from the very beginning of his employment, and therefore he ultimately lost his job, while Vaught did not. Therefore, Plaintiff has met the evidentiary burden of his <u>prima</u> <u>facie</u> case to show disparate treatment for similar conduct.

### b. Pretext

Once a <u>prima</u> <u>facie</u> case has been established, the defendant must articulate a legitimate, non-discriminatory reason for the employment decision. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). Once the defendant has met this burden, the plaintiff must be afforded an opportunity "'to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000) (quoting <u>Burdine</u>, 450 U.S. at 253). The plaintiff may demonstrate the pretextual nature of the offered reason for the employment decision by establishing (1) that the proffered reason had no basis in fact, or (2) the proffered reasons did not actually motivate the discharge, or (3) the proffered reasons were insufficient to motivate discharge. <u>Manzer v. Diamond Shamrock Chem Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994).

Here Defendant attacks Plaintiff's racial discrimination claim, arguing that in its view, Plaintiff has failed to establish a genuine issue of material fact regarding pretext (docs. 13, 15). Plaintiff has the burden to show by a preponderance of the evidence that Defendant's explanation for his termination, Plaintiff's alleged lying during an investigation, is merely a pretext for his termination. Defendant's investigation stated that Plaintiff was the only one to deny the gun had been taken to the work site (doc. 13).

Having reviewed both Plaintiff's deposition and Plaintiff's January 9, 2008 statement, the Court finds that a reasonable jury could accept Plaintiff's contention that though he knew, and admitted to Defendant, that Fuchs traveled with a firearm and kept it in the hotel room, Plaintiff did not personally witness Fuchs discharge the gun at the work site. A jury could very well disagree with Defendant's characterization that Plaintiff denied Fuchs took the gun to the work site, because the record shows Plaintiff's statements were not outright denials, but were more indeterminate in nature. As such, a jury might find that Defendant's proffered reason for Plaintiff's discharge did not actually motivate the discharge. Ultimately, the Court believes the issue of Plaintiff's veracity and the issue of Defendant's "honest belief" call for credibility determinations, which are in

the province of the jury.  See <u>Reeves v. Sanderson Plumbing Prods.,</u> <u>Inc.</u>, 530 U.S. 133, 150 (2000).

As a final matter, the Court finds that the question of who is telling the truth regarding the shoving incident, whether Vaught or Plaintiff, is clearly within the province of the jury. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).

### 3. Plaintiff's Common Law Claim

The Court finds it appropriate in this matter to construe Plaintiff's Ohio common law claim as a public policy claim, in that it is merely duplicative of Plaintiff's statutory claim.  As such, the Court finds applicable the reasoning of <u>Carrasco v. NOAMTC,</u> <u>Inc.</u>, in which the Sixth Circuit found that Title VII and Ohio Rev. Code § 4112 provide adequate remedies to vindicate Ohio's public policies against unlawful employment discrimination, and therefore such claims are precluded under Ohio law.  124 Fed. Appx. 297, 304 (6th Cir. 2004) (interpreting the Ohio Supreme Court's ruling in <u>Wiles v. Medina Auto Parts</u>, 773 N.E.2d 526, 530 (Ohio 2002) to bar public policy claims where there exists a statutory remedy that adequately protects society's interests).  Accordingly, the Court finds it appropriate to dismiss Plaintiff's Ohio public policy claim.

## IV. CONCLUSION

For the reasons indicated herein, the Court finds genuine issues of material fact preclude judgment for Defendant on Plaintiff's federal and state law discrimination claims. However, the Court finds it appropriate to dismiss Plaintiff's common law claim.

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion for Summary Judgment (doc. 13) such that Plaintiff's Title VII claims and state law discrimination claims under Ohio Rev. Code § 4112 survive Defendant's motion, while Plaintiff's common law claims are dismissed. Finally, the Court SETS this matter for final pretrial conference at 10:00 A.M. on August 25, 2010, and SCHEDULES the three-day jury trial to commence on September 21, 2010.


SO ORDERED.

Dated: April 15, 2010          /s/ S. Arthur Spiegel

                               S. Arthur Spiegel
                               United States Senior District Judge